IN THE CIRCUIT COURT, SEVENTH JUDICIAL CIRCUIT, IN AND
FOR VOLUSIA COUNTY, FLORIDA

IRVEN ELMORE,

        Plaintiff,               CASE NO.:

vs.

WALGREEN, CO., a foreign
corporation,

        Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, IRVEN ELMORE (hereafter "Elmore"), by and through his counsel, hereby files this Complaint and Demand for Jury Trial against Defendant, WALGREEN, CO. (hereafter "WALGREEN"), and alleges as follows:

### NATURE OF ACTION

1. This is an action arising from and seeking redress for claims of age discrimination and retaliation asserted by Elmore against Walgreen under the Florida Civil Rights Act of 1992, Chapter 760, Florida Statutes (the "FCRA").

### JURISDICTION AND VENUE

2. The instant suit is a claim for damages in excess of $30,000.00.

3. This Court has jurisdiction over Plaintiff's claims pursuant to section 26.012(2)(a), Florida Statutes, section 760.11(4), (5) and (8), Florida Statutes.

4. Venue is proper in the Seventh Judicial Circuit in and for Volusia County, Florida, because the unlawful employment practices and acts that give rise to this action were committed within this judicial district.

**EXHIBIT A**

2021 30642 CICI

## PARTIES

5.    At all times material hereto, Elmore was a resident of Volusia County, Florida.

6.    At all times material hereto, Walgreen was a foreign corporation doing business in Volusia County, Florida.

7.    At all times material hereto, Walgreen was an "employer" as defined by section 760.02(7), Florida Statutes, because it employed fifteen (15) or more employees in an industry affecting commerce for each working day in each of twenty (20) or more calendar weeks in the year in which the unlawful employment practices took place and the preceding calendar year.

8.    At all times material hereto, Walgreen was the employer of Elmore.

## COMPLIANCE WITH PROCEDURAL REQUIREMENTS

9.    Elmore exhausted his administrative remedies under the FCRA by dual-filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and the Florida Commission on Human Relations (FCHR) within three hundred sixty-five (365) days of the discriminatory conduct alleged in this action.

10.    Elmore has satisfied any and all administrative requirements precedent to the filing of this action under the FCRA and is permitted to proceed to court pursuant to section 760.11, Florida Statutes.

## FACTUAL ALLEGATIONS

11.    Elmore began his employment with Walgreen in October, 1983.

12.    Elmore's most recent position held was Store Manager in the Daytona Beach area.

13.    In approximately July 2016, Elmore's new supervisor, Nicole Macek ("Macek"), was hired as the District Manager.

14.     In November 2016, Macek met with Elmore to provide him with his annual review.

15.     At this time, Macek had only been in her position for approximately four months and had personally observed Elmore perform his job on only one or two occasions.

16.     Elmore received a subpar score of 2.9 (on a 5.0 rating scale) on his annual evaluation.

17.     Elmore questioned this score and was told that it was not Macek's review, but that of the outgoing district manager, John Cibiras ("Cibiras").

18.     Macek told Elmore that the score of "2" on the portion of the evaluation regarding self-development goals was based on her review because Elmore did not update his portal monthly as required by company policy.

19.     Elmore told Macek that he had no idea he was required in fiscal year 2015 to update his personal goals monthly.

20.     Following the performance review, Elmore was told he was being transferred to a new location because he was underutilized at his current store and that his current store should be used for new store managers that need to gain experience in a lower volume situation.

21.     Elmore expressed concern that this transfer would be quite an increase in drive time for him and was immediately told by Macek, "that falls on deaf ears, I drive way more than that."

22.     Macek also told Elmore the transfer was not a choice, and going forward managers would be transferred more frequently than in the past.

23.     Previously, transfer requests delivered by District Manager's were only done if there were pending issues such as poor performance or possible disciplinary action.

24.     After the manager's transfers were complete, the "new manager" that took Elmore's place was a veteran manager of 13 years.

25.     A Performance Improvement Plan ("PIP") was initiated for Elmore.

26.     Elmore questioned Macek regarding the PIP and stated it was his understanding that a score of 2.5 was the level when a PIP would be initiated. Macek responded, "well, it's my prerogative."

27.     In Elmore's years of experience as a manager with Walgreen, if an employee was having serious enough issues that could lead to termination, it was verbalized and documented and the employee was given a chance to improve.

28.     On November 27, 2016, Elmore submitted a written complaint to Human Resources asserting that he believed he was being subjected to age discrimination by Macek.

29.     In December 2016, Human Resources told Elmore they would conduct an investigation in response to his concerns.

30.     Elmore subsequently met with Macek's supervisor, Greg Myers ("Myers"), and Joel Dominguez ("Dominguez").

31.     During this meeting with Myers and Dominguez, Elmore was told they were, "impressed with his letter" and "it shows me that you have fight."

32.     However, Elmore was told by Myers and Dominguez that they, "didn't feel there was discrimination" and to "just do what she says."

33.     On February 10, 2017, Elmore successfully completed his PIP.

34.     On April 5, 2017, Elmore met with Macek to discuss his mid-year performance.

35.     Elmore rated his performance as slightly above average.  In response, Macek stated, "we're not on the same page" and mentioned several items in his PIP.

4

36.     Elmore reminded Macek that he had successfully completed his PIP and continued to see positive results within his store.

37.     After this meeting, Macek made several unannounced visits to Elmore's store and exaggerated minor situations and made many untrue negative comments, i.e., that his store was in "disarray."

38.     Elmore took photos immediately after this comment proving that everything in his store was immaculate.

39.     On May 31, 2017, Macek informed Elmore that his employment was terminated.

40.     Elmore questioned the reason why he was being terminated and Macek responded, "you know." No other reason was given.

41.     Elmore was taken aback as he had not received any other warnings after his successful completion of his PIP.

42.     No other store managers were treated in the same discriminatory manner.

43.     Elmore's position was subsequently replaced with an individual in her 20's.

44.     Elmore was a career store manager with Walgreen and at one point was in the emerging leader program and in consideration for a District Manager position.

45.     Elmore was treated less favorably than similarly situated employees who were younger, because his employment was terminated while the younger employees were not terminated.

### COUNT I: FLORIDA CIVIL RIGHTS ACT OF 1992, CHAPTER 760, FLORIDA STATUTES (AGE DISCRIMINATION)

46.     Elmore hereby repeats and realleges the allegations contained in paragraphs 1 through 45 as if fully set forth herein.

47.     Elmore is, and was at all times relevant to this action, over the age of 40, placing him within a protected category (age) under the FCRA.

48.     Elmore was 55 years old at the time his employment was terminated by Walgreen.

49.     Elmore was, at all times material hereto, qualified to perform and did perform his job duties with Walgreen.

50.     Elmore was subjected to adverse employment actions because of his age when, *inter alia*, Walgreen treated him less favorably than younger employees in the terms and conditions of his employment, setting Elmore up to fail at his job by giving him an unwarranted Performance Improvement Plan, overly scrutinizing Elmore's workload, and ultimately terminating Elmore's employment with no reason given, and replacing his position with an individual in her 20's, when younger employees were treated more favorably for the same conduct and were not terminated.

51.     Walgreen treated younger employees more favorably than Elmore and ultimately terminated his employment because of his age.

52.     As a direct and proximate result of Walgreen's discriminatory actions, Elmore has incurred, and will continue to incur, economic damages in the form of lost wages and benefits, and other compensable damages in the form of emotional pain and suffering, inconvenience, embarrassment, humiliation, mental anguish, and loss of enjoyment of life.

53.     The actions of Walgreen make reinstatement ineffective as a make-whole remedy, entitling Elmore to front pay in lieu of reinstatement.

54.     Elmore has retained counsel to represent him in this matter and has incurred, and will continue to incur, attorneys' fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Elmore demands judgment against Walgreen for:

a.    Back pay;

b.    Front pay in lieu of reinstatement;

c.    Compensatory damages;

d.    Attorneys' fees and costs of this action pursuant to § 760.11(5), Fla. Stat.; and

e.    Such other relief as this Court deems just and proper.

## COUNT II: FLORIDA CIVIL RIGHTS ACT OF 1992, CHAPTER 760, FLORIDA STATUTES (RETALIATION)

55.    Elmore hereby incorporates the allegations set forth in paragraphs 1 through 45 by reference.

56.    Walgreen violated the FCRA by retaliating against Elmore for objecting to the unlawful age discrimination to which he was being subjected, with such practices constituting unlawful employment practices.

57.    Walgreen took adverse employment actions against Elmore by subjecting Elmore to a hostile work environment, setting Elmore up to fail at his job by giving him an unwarranted Performance Improvement Plan, time-consuming duties, being disrespectful and verbally abusive towards Elmore, overly scrutinizing Elmore's workload, and ultimately terminating Elmore's employment for no reason, when younger employees were treated more favorably for the same conduct and were not terminated.

58.     The adverse employment actions suffered by Elmore were causally related to, and in retaliation for, Elmore having engaged in the protected activities of complaining about, and objecting in good faith to, unlawful age discrimination as prohibited by the FCRA.

59.     As a direct, proximate, and foreseeable result of Walgreen's retaliatory actions, Elmore has suffered past and future pecuniary losses, emotional pain, suffering, embarrassment, humiliation, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, emotional distress and other non-pecuniary losses and intangible injuries.

60.     The actions of Walgreen make reinstatement ineffective as a make-whole remedy, entitling Elmore to front pay in lieu of reinstatement.

61.     Elmore has retained counsel to represent him in this matter and has incurred, and will continue to incur, attorney's fees and costs.

## DEMAND FOR RELIEF

WHEREFORE, Elmore demands judgment against Walgreen for:

    a.     Back pay;

    b.     Front pay in lieu of reinstatement;

    c.     Compensatory damages;

    d.     Attorneys' fees and costs of this action pursuant to § 760.11(5), Fla. Stat.; and

    e.     Such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable as a matter of right.

Date: May 17, 2021.

Respectfully submitted,


s/David H. Spalter
David H. Spalter, Esquire
Florida Bar No.
Jill S. Schwartz, Esquire
Florida Bar No.  523021
Jill S. Schwartz & Associates, P.A.
655 W. Morse Blvd., Suite 212
Winter Park, Florida 32789
Telephone: (407) 647-8911
Facsimile: (407) 628-4994
E-mail: dspalter@schwartzlawfirm.net
E-mail: jschwartz@schwartzlawfirm.net
Secondary E-mail: docketing@schwartzlawfirm.net
Secondary E-mail: acook@schwartzlawfirm.net
Attorneys for Plaintiff

## VERIFICATION

Personally appeared before the undersigned, Irven Elmore, who being first duly sworn, deposes and says that the allegations of this Verified Complaint and Demand for Jury Trial, consisting of paragraphs 1 through 61, inclusive of Demands for Relief, are true and correct to the best of his knowledge, information and belief.

_____
IRVEN ELMORE

STATE OF FLORIDA          )
COUNTY OF Volusia         )

The foregoing instrument was acknowledged before me this _14_ day of May __ , 2021, by IRVEN ELMORE, who is personally known to me or who has produced _Personally known_ as identification, and who did take an oath.

_____
Notary Public – State of Florida at Large
My Commission Expires: _Apr 4 2025_

SEAN BENNETT
MY COMMISSION # HH 113227
EXPIRES: April 4, 2025
Bonded Thru Notary Public Underwriters

10



**LAURA E. ROTH**
CLERK OF THE CIRCUIT COURT

SEVENTH JUDICIAL CIRCUIT - VOLUSIA  COUNTY
P.O. BOX 6043 DELAND, FLORIDA 32721-6043 - WWW.CLERK.ORG

Filing #: ███████

Filer:David H. Spalter

Payment:$410.00

1 Filing Fee: $400.00

2 Summons Issuance: $10.00

3 Complaints/Petitions Complaint: $0.00

4 Complaints/Petitions Request that Summons be Issued: $0.00

5 Miscellaneous Other Document: $0.00

6 Complaints/Petitions Civil Cover Sheet: $0.00

*This document is a Clerk generated receipt.  This  page was not included in the original court document submitted by the filer.*